**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tiag Gifford,<br><br>               Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>               Defendant. | No. CV-22-01567-PHX-DJH<br><br>**ORDER** |

Plaintiff Tiag Gifford ("Plaintiff") seeks this Court's review of the Social Security Administration ("SSA") Commissioner's (the "Commissioner") denial of his application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits. (Doc. 15 at 1). The matter is fully briefed. (Docs. 15; 17; 18). Upon review of the briefs and the Administrative Record (Docs. 10 & 11, "AR"), the Court affirms in part and reverses in part.

**I.    Background**

Plaintiff initially applied for SSI and SSDI benefits under the Social Security Act ("the Act") in May of 2015 and alleged a disability onset date of March 29, 2015. (AR at 23). These claims were denied by the Commissioner and on an Admirative Law Judge ("ALJ") concluded that Plaintiff was not disable under the Act. (*Id*. at 23–24). Plaintiff filed a complaint for judicial review and the Commissioner stipulated to a remand. (*Id*. at 1697). This Court remanded the case to the Commissioner and a second hearing was conducted. (*Id*.) The ALJ found in its September 21, 2021, decision that Plaintiff was

disabled from March 29, 2015, through February 15, 2017; but that medical improvement occurred on February 16, 2017, related to Plaintiff's ability to work. (*Id.* at 1680). To determine whether Plaintiff was disabled, the ALJ used a five-step SSA process for determining whether an individual is disabled. (*Id.* at 1681–82). To determine whether Plaintiff continued to be disabled through the date of its decision, the ALJ utilized an eight-step process developed for this purpose related to Title II claims. (*Id.* at 1682–84).

### A. The ALJ's Five-Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled for purposes of the Social Security Act ("the Act"):

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett*, 180 F.3d at 1098.

[2] A claimant's "residual functional capacity" is defined as their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

(g).  If the ALJ determines no such work is available, the claimant is disabled. *Id*. § 404.1520(a)(4)(v).

At the first and second steps, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date and that Plaintiff had the following severe impairments: "status post femur fracture, status post sacral fracture, status post lumbosacral fixation, status post right testicular disruption avulsion, degenerative disc disease (DDD), and complex regional pain syndrome." (AR at 1684).  At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.  (*Id*. at 1685).

At step four, the ALJ concluded that Plaintiff had the following residual functional capacity ("RFC") from March 29, 2015, through February 15, 2017:

> [Plaintiff has the RFC] "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he could sit for 6 hours with normal breaks and stand and/or walk for 2 hours with normal breaks during an 8-hour day. He could lift and carry 10 pounds occasionally and 5 pounds frequently. He required the option to use a cane for ambulation. He could have no exposure to hazards such as moving machinery and unprotected heights. Due to his symptoms and treatment associated with his combined impairments, he would have missed work two to three times per month on average.

(*Id*.)  At step-five, the ALJ found that Plaintiff was unable to perform any past relevant work or make an adjustment to other work.  (*Id*. at 1693).  In other words, Plaintiff was disabled from March 29, 2015, through February 15, 2017.  (*See id*.)  However, utilizing the Eight-Step Process, the ALJ concluded that Plaintiff was no longer disabled as of February 16, 2017.  (*Id*. at 1694).

**B.     The ALJ's Eight-Step Process**

The framework for determining whether a claimant continues to be disabled under the Act entails an eight-step evaluation process for Title II claims and a seven-step evaluation for Title XVI claims.  *See* 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).  Plaintiff's application for benefits is a Title II application, therefore, the Eight-Step process applies.

(AR at 23). This district has summarized the framework as follows:

> At step 1 of the Title II evaluation, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1594(f)(1). If so, the claimant is no longer disabled. *Id.* If not, the ALJ proceeds to step 2 (step 1 for the Title XVI evaluation). *Id.* § 404.1594(f)(2).
>
> At step 2, the ALJ determines if the claimant has an impairment or combination of impairment[s] which meets or equals the severity of an impairment listed in Appendix 1 to 20 C.F.R. § 404, subpart P. *Id.* If so, the claimant is still disabled. *Id.* If not, the ALJ proceeds to step 3. *Id.* § 404.1594(f)(3).
>
> At step 3, the ALJ determines if there has been medical improvement as shown by a decrease in medical severity. *Id.* If so, the ALJ proceeds to step 4. *Id.* If not, the ALJ skips to step 5. *Id.*
>
> At step 4, the ALJ determines if the medical improvement is related to the claimant's ability to do work, *i.e.*, if there has been an increase in the claimant's [residual functioning capacity]. *Id.* § 404.1594(f)(4). If so, the ALJ skips to step 6. *Id.* If not, the ALJ proceeds to step 5. *Id.*
>
> At step 5, the ALJ determines whether any exceptions in 20 C.F.R. §§ 404.1594(d), (e) apply. *Id.* § 404.1594(f)(5). If none apply, the claimant is still disabled. *Id.* If an exception in 20 C.F.R. § 404.1594(e) applies, the claimant is no longer disabled. *Id.* If an exception in 20 C.F.R. § 404.1594(d) applies, the ALJ proceeds to step 6. *Id.*
>
> At step 6, the ALJ determines whether all of the claimant's current impairments in combination are severe. *Id.* § 1594(f)(6). If not, the claimant is no longer disabled. *Id.* If so, the ALJ proceeds to step 7. *Id.*
>
> At step 7, the ALJ assesses the claimant's [residual functioning capacity] and determines whether the claimant can perform past work. *Id.* § 404.1594(f)(7). If so, the claimant is no longer disabled. *Id.* If not, the ALJ proceeds to step 8. *Id.* § 404.1594(f)(8).
>
> At step 8, the ALJ determines whether the claimant can perform any other work give the claimant's [residual functioning capacity], age, education, and past work experience. *Id.* If so, the claimant is no longer disabled. *Id.* If not, the claimant is still disabled. *Id.*

*King v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587429, at *2 (D. Ariz. Sept. 18, 2020).

The ALJ's findings in its September 2021 Decision are as follows:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (AR at 1684). At step two, the ALJ found that, beginning on February 16, 2017, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 1694). Next, the ALJ found that medical improvement occurred; evidenced by a decrease in medical severity because Plaintiff improved with treatment, his x-rays showed his femur and pelvis had healed and he was not tender in his lower left extremity. (*Id*. at 1694–95). At step four, the ALJ found that the medical improvement that occurred was related to Plaintiff's ability to work because there had been an increase in his RFC. (*Id*. at 1695). Because of this, the ALJ skipped to step six.

At step six, the ALJ did not specifically find whether Plaintiff's impairments in combination were severe, but necessarily must have, as it moved on to step seven. (*Id*.) At step seven, the ALJ found that Plaintiff has the RFC to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he would require the option to use a cane for ambulation. He should not be exposed to hazards such as moving machinery and unprotected heights." (*Id*.) The ALJ also determined, under this same step, that Plaintiff could not perform past relevant work. (*Id*. at 1701). Finally, at step eight, the ALJ determined that Plaintiff could perform other work given his RFC, age, education, and past work experience. (*Id*.) In sum, the ALJ found that Plaintiff's disability ended on February 16, 2017, and Plaintiff had not become disabled again since that date. (*Id*. at 1702). Now, the Court must decide whether the ALJs decision was erroneous.

## II.     Standard of Review

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050,

1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been based on other evidence available. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

"Harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision, and the error does not affect the ultimate no disability determination. *Id*. Typically, the claimant bears the burden of showing that an error is harmful. *Id*. at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

/ / /

### III. Discussion

Plaintiff argues that (1) substantial evidence does not support the ALJ's decision that medical improvement occurred; (2) the ALJ did not properly consider the medical opinion testimony; and (3) the ALJ did not properly consider Plaintiff's symptom testimony. (Doc. 15 at 1). The Court will address each of Plaintiff's arguments in turn.

#### A. Medical Improvement

Plaintiff first argues that the ALJ erred by finding Plaintiff's medical condition improved as of February 16, 2017, absent medical evidence of improvement. (Doc. 15 at 14).

A plaintiff is no longer entitled to benefits when substantial evidence demonstrates (1) "there has been any medical improvement in the [plaintiff's] impairment" and (2) the plaintiff "is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1). To determine whether there has been medical improvement, the ALJ *must* "compare the current medical severity" of the plaintiff's impairments to the medical severity of the impairments "at the time of the most recent favorable medical decision that [the plaintiff] w[as] disabled or continued to be disabled." *Attmore v. Colvin*, 827 F.3d 872, 873 (9th Cir. 2016) (citing 20 C.F.R. § 404.1594(b)(7)) (emphasis added). In "closed period cases," where the ALJ finds in a single decision that the plaintiff was disabled for a closed period of time but has since medically improved, such as here, the ALJ should "compare the medical evidence used to determine that the plaintiff was disabled with the medical evidence existing at the time of asserted medical improvement." *Id*. In other words, the ALJ was required to compare the evidence it used to find Plaintiff disabled before February 16, 2017, with the evidence it relied on to find medical improvement occurred. *See id*.

The Commissioner argues that there is a "presumption" that ALJs are, "at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). This presumption applies to an ALJs general duty to discuss medical opinion testimony, however, not the

requirement that an ALJ must compare the medical evidence in a closed period case. *Compare Farlow*, 53 F.4th at 488 *with Attmore*, 827 F.3d at 873. Importantly, the Commissioner does not argue that the ALJ compared the medical evidence as required. Instead, the Commissioner only argues that *Farlow* essentially renders the error harmless and that, in any event, the ALJs decision is supported by substantial evidence. (Doc. 17 at 6–8). The Court cannot agree.

Below, as Plaintiff points out, The ALJ's medical improvement evaluation was limited to a lone paragraph:

> The claimant sustained orthopedic injuries in a motorcycle accident. However, he had improved with treatment and the record does not support a finding of disability after February 16, 2017. On February 16, 2017, x-rays showed a well healed femur and stable healed pelvis. He was non tender in the left lower extremity.

(AR at 1695). However, during the five-step process, the ALJ found that Plaintiff was disabled and suffered from several severe impairments: "status post femur fracture, status post sacral fracture, status post lumbosacral fixation, status post right testicular disruption avulsion, degenerative disc disease (DDD), and complex regional pain syndrome." (*Id*. at 1684). The ALJ failed to discuss, let alone compare, Plaintiff's right testicular disruption avulsion or degenerative disc disease at the medical improvement stage. (*Id*. at 1695). The ALJ was required to compare and contrast this evidence with the objective medical evidence used to determine that Plaintiff was disabled in the first instance. *See Attmore*, 827 F.3d at 873. Thus, the ALJ harmfully erred and the Court must reverse its decision and remand this case to the Commissioner so that the ALJ may compare this evidence as required by *Attmore* and 20 C.F.R. § 404.1594(b)(7).[3]

---

[3] The Court must remand this case for further proceedings, rather than for an award of benefits, as the ALJ did not reject any evidence, instead, he simply failed to compare evidence already in the record as required. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (stating that the court has discretion to remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.") (citations omitted).

The Court will also address Plaintiff's argument's on whether the ALJ properly discounted the medical opinion testimony and Plaintiff's symptom testimony as these will also need to be considered on remand if the ALJ did err. (Doc. 15 at 1)

### B. The Medical Opinion Testimony

Plaintiff next argues that the ALJ committed materially harmful error by rejecting the assessments from Plaintiff's treating physician, Dr. Kevin S. Ladin, in the absence of specific and legitimate reasons supported by substantial evidence. (Doc. 15 at 19). Plaintiff's claim was filed in May of 2015, so the pre-2017 regulations applies to this case. *See* 20 C.F.R. § 416.920c (setting out how the SSA considers and articulates medical opinions for claims filed on or after March 27, 2017).

Under the pre-2017 regulations, the ALJ generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the plaintiff's impairments, the plaintiff's physical or mental limitations, and what the plaintiff can still do despite the impairments and limitations. 20 C.F.R. §§ 404.1527, 416.927(a)(2). In weighing medical source opinions, there are three categories of physicians: (1) treating physicians, who actually treat the plaintiff; (2) examining physicians, who examine but do not treat the plaintiff; and (3) non-examining physicians, who neither treat nor examine the plaintiff. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is generally entitled to deference. *See id.* More weight typically should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).

Thus, where a treating physician's opinion is not contradicted by another physician it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

*Garrison*, 759 F.3d at 1012 (internal quotation and citation omitted). "An ALJ's rationale for discounting a treating physician's opinion is comprised of two parts: (1) the stated reasons for discounting a treating physician's opinion and (2) the evidence supporting those reasons. Error can occur in both." *Richard v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1349717, at *3 (D. Ariz. Mar. 26, 2019).

Below, the ALJ assigned "minimal weight" to Dr. Ladin's opinion at the medical improvement stage because Dr. Ladin did not identify clinical evidence to support a finding that the assessed limitations continued to exist in 2017 as required to meet the listing changed in 2017. (AR at 1692, 1700). The ALJ also found that Dr. Ladin's assessment was not clear or supported because, in 2017, he added his signature to a form filled out by Dr. Gill Ortega in 2015. (*Id*. at 1700). The ALJ stated that Dr. Ladin failed to address whether the limitations Dr. Ortega originally assessed in September 2015 lasted longer than six to twelve months. (*Id*.) Importantly, Dr. Ortega assessed in this September 2015 opinion that Plaintiff's limitations would only last for six to twelve months. (*Id*.) The ALJ further stated that Dr. Ladin failed to identify any clinical evidence to support a finding that these assessed limitations continued to exist in 2017. (*Id*.)

The ALJ also discussed Dr. Ladin's 2021 opinion. (*Id*.) The ALJ assigned partial weight to this opinion because Dr. Ladin's treatment notes did not support the degree of limitation asserted. (*Id*.) The ALJ reasoned that Plaintiff reported doing light workouts at the gym but was not doing so due to time constraints rather than an inability to do so; was working on cars; use of Lidoderm patches was quite effective; and that Plaintiff traveled to California after the alleged onset date by motor vehicle, which would require him to sit for more than ten to fifteen minutes. (*Id*.)

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons based on substantial evidence in the record for its decision to assign minimal weight and partial weight to Dr. Ladin's opinions. (Doc. 15 at 24). The Commissioner argues that the ALJ properly assessed and rejected Dr. Ladin's opinions. (Doc. 17 at 8). The Court agrees with the Commissioner.

The ALJ contrasted Dr. Ladin's opinion with the opinions of state agency medical consultants Dr. Melvin Roberts and Dr. Charles Fina. (AR at 1698). The ALJ assigned partial weight to their opinions and found that these opinions supported a light exertion RFC. (*Id*.) Other than this, the ALJ did not contradict Dr. Ladin's opinion with another physicians, therefore, Dr. Ladin's opinion may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The Court concludes that it was.

The ALJ assigned Dr. Ladin's 2017 opinion minimal weight and the 2021 opinion partial weight, respectively. (AR at 1699–1700). From the above, the Court finds that the ALJ rejected Dr. Ladin's opinions for clear and convincing reasons because it set out a detailed a thorough summary of the facts and conflicting evidence, stated its interpretation, and then made its findings. *See Garrison*, 759 F.3d at 1012. Moreover, the Court finds that the evidence in the record that the ALJ relied on to reach its conclusion is susceptible to more than one rational interpretation, therefore, the ALJ's conclusion must be upheld. *See Thomas*, 278 F.3d at 954 ("[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The ALJ is responsible for resolving conflicts in the testimony, determining credibility, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. This Court will not reweigh the evidence on appeal. *See Trejo v. Colvin*, 2016 WL 769106, at *3 (C.D. Cal. Jan. 28, 2016) ("This Court does not reweigh the evidence or act as a next-level fact-finder on appeal; its appellate review is limited to determining whether the agency committed reversible legal error."). Accordingly, the ALJ's decision to discredit Dr. Ladin's medical opinion is supported by substantial evidence.

### C. Plaintiff's Symptom Testimony

Finally, Plaintiff argues the ALJ did not properly consider his symptom testimony. (Doc. 15 at 1). The Court disagrees.

An ALJ performs a two-step analysis to evaluate a claimant's testimony of pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ

evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R. § 404.1502(a). "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id* (quoting *Lingenfelter*, 504 F.3d at 1040).

Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Nor can an ALJ "effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022).

Plaintiff specifically argues that the ALJ failed to connect anything in the subsequent medical summary to a specific inconsistency with any particular portion of Plaintiff's symptom testimony; especially since the ALJ found Plaintiff's symptom testimony consistent with the evidence for the period of disability. (Doc. 15 at 25). The Commissioner argues that the ALJ properly considered Plaintiff's subjective allegations but found them unsupported given Plaintiff's "extensive daily activities" which included working to restore a car, returning to the gym when time permitted, and an ability to work during the period he now alleges to have been disabled. (Doc. 17 at 12).

At the hearing, Plaintiff testified that after his motorcycle accident he was limited to sitting for 1 hour at a time, standing fifteen to twenty minutes at a time, walking barely around the block and lifting five to ten pounds. (AR at 1695). Plaintiff also testified that he had "chronic regional pain syndrome with a pain level of 5 to 7 out of 10" and that a couple of times per month he spent all day in bed. (*Id.*)

After hearing this testimony, the ALJ found at step one of the two-step process that "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (*Id.*) The ALJ found at step-two, however, that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The ALJ relied on evidence that Plaintiff had three or four hours of relief from spinal injections and had x-rays that showed his femur and pelvis were well healed. (*Id*. at 1696). The ALJ also relied on evidence that Plaintiff felt relief from medication: Gabapentin. (*Id.*) The ALJ noted that, in an April 9, 2018, report, Plaintiff stated he biked and swam five to six times a week. (*Id*. at 1697). The ALJ also stated that evidence that Plaintiff never obtained a recommended spinal MRI suggests his symptoms "were not more limiting than found in this decision." (*Id*. at 1698). The ALJ ultimately found that "while the [Plaintiff] has continued to have work related limitations due to his combined impairments, the record does not support a finding that he has been more limited than found in this decision." (*Id.*)

The Court finds that the reasons the ALJ used to find that Plaintiff's testimony was

not "entirely consistent" with other evidence in the record are specific, clear and convincing and supported by substantial evidence. *Molina*, 674 F.3d at 1112. The ALJ specifically identified the testimony it found not credible and explained what evidence undermines the testimony. *See Holohan*, 246 F.3d at 1208. For example, the ALJ found that Plaintiff's testimony about the intensity, persistence and limiting effects of his impairments was undercut by testimony and evidence that he biked and swam five to six times a week and never obtained a recommended spinal MRI. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[t]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). The ALJ also noted that Plaintiff felt relief from Gabapentin and was "staying active." (*Id*. at 1698). The ALJ further noted that x-rays that showed Plaintiff's femur and pelvis were well healed. *See Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability").

The Court "does not read the ALJ's 'not entirely consistent' statement [ ] as requiring Plaintiff to fully corroborate her symptom testimony with objective medical evidence. Instead, the ALJ's statement merely notes that the record contains conflicting evidence." *McPherson v. Comm'r of Soc. Sec. Admin.*, 2021 WL 3709845, at *7 (D. Ariz. Aug. 20, 2021). Because the ALJ found that Plaintiff "engages in daily activities [that are] inconsistent with [her] alleged symptoms," her decision to "reject" Plaintiff's symptom testimony is supported by substantial evidence. *Molina*, 674 F.3d at 1112 (internal citations omitted).

**IV.    Conclusion**

For the reasons set forth above, the Court reverses the ALJs decision in part and remands this case to the Commissioner so that it may compare the medical evidence used to determine that Plaintiff was disabled with the medical evidence existing at the time of asserted medical improvement on remand. Plaintiff's arguments that the ALJ did not properly consider the medical opinion testimony or Plaintiff's symptom testimony are affirmed, however.

Accordingly,

**IT IS HEREBY ORDERED** that the September 21, 2021, decision of the Administrative Law Judge (AR at 1679–1702) is **affirmed in part and reversed in part**.

**IT IS FURTHER ORDERED** that this case is **REMANDED** to the Commissioner for further proceedings.

**IT IS FINALLY ORDERED** that the Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 30th day of March, 2024.

Honorable Diane J. Humetewa
United States District Judge